UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KURTIS McCLAIN,

        Plaintiff,

v.

UNKNOWN CAGE, *et al.*,

        Defendants.

_____/

Case No. 1:16-cv-1017

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner in the custody of the Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983. This matter is now before the Court on defendants' motion for summary judgment for lack of exhaustion (ECF No. 16). Defendants' motion is unopposed.

    **I.**    **Background**

Plaintiff's complaint named the following employees at the Muskegon Correctional Facility (MCF): Inspector Cage; Resident Unit Manager (RUM) Brege; Assistant Resident Unit Supervisor (ARUS) Fager; Lt. Larski; Deputy Warden Kowalski; Sgt. Shavez; Correctional Officer (CO) Fauber; Warden Jackson; and Prison Counselor Wallace. Plaintiff alleged that defendants violated his Eighth Amendment rights by forcing him to leave his cell naked, moving him to a dangerous cell, using excessive force, and failing to treat his injuries based on the following incident:

> Plaintiff alleges that, on August 1, 2016, Defendants Larski and Fauber came into his segregation cell and told him to turn around and cuff up. Plaintiff asked to be permitted to put on his jumpsuit, as he was naked. The officers laughed at him. When Plaintiff reached for his jumpsuit and tried to put it on, the officers grabbed him around the neck and shoulders, telling him to put his hands behind his back.

> Plaintiff then asked the officers to please not take him back to the general population, as his life was in danger. At that point, Defendant Shavez rushed into the cell with unidentified other officers. Plaintiff balled himself up in a corner of the cell while the officers hit him, kneed him in the head, and furiously pulled at his feet. They managed to put him in handcuffs, but they continued to refuse to give him any clothing. Defendant Cage instructed the officers to "take his ass out of here [I] don[']t care -- here wrap this sheet over his narrow ass." (Compl., ECF No. 1, PageID.4.) Plaintiff alleges that the officers continued to rough him up as they escorted him to the general population cell with only a sheet around his waist. They pushed Plaintiff into the cell, which was occupied by a prisoner who "was out to get" Plaintiff. (*Id*.) Plaintiff refused to be "placed in harms way again . . . ." (*Id*.) He therefore tried to get out of the cell before the door closed. The cell door closed on his arm, and Defendants left him with his arm stuck in the door for half an hour. His arm was numb by the time Sergeant Pohl (not a Defendant) came to open the cell. When the door was opened, Plaintiff rushed out, because of his fear of his cellmate. An officer drove his knee into the side of Plaintiff's leg, but Plaintiff "held on for dear life . . . ." (*Id*.) Plaintiff subsequently was sprayed with pepper spray and then cuffed and taken to segregation. Plaintiff complains that he was not given proper medical attention for the scrapes to his wrists and feet, though he admits that his leg was checked to determine whether it was broken.
>
> Plaintiff alleges that the incident "had to have been authorized first by higher administration such as (Dep Warden - Kowalski - Warden - Jackson - inspector - Cage [-] R.U.M. Brege - ARUS Fager, pc - Wallace)[.]" (*Id*., PageID.5.) Plaintiff therefore asserts that he considers these Defendants responsible for the attack.

Opinion (ECF No. 9, PageID.32-33).

After initial review of the complaint, the Court dismissed defendants Brege, Fager, Kowalski, Jackson, and Wallace, as well as plaintiff's claim that he was denied medical care in violation of the Eighth Amendment. *Id*. at PageID.37-38. The Court ordered service of the complaint against defendants Inspector Cage, Lt. Larski, Sgt. Shavez and CO Fauber. *Id*. at PageID.38: Order (ECF No. 10).

## II. Defendants' motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

### B. Failure to Exhaust

### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and

4

other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

## 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

5

### 3. Discussion

Plaintiff filed this action on August 15, 2016. *See* Comp. (ECF No. 1). According to MDOC records, plaintiff did not exhaust any grievances through Step III prior to filing his complaint. *See* MDOC Prisoner Step III Grievance Report (ECF No. 17-3, PageID.69) (showing no record of a Step III grievance filed from May 2009 through November 14, 2016). Plaintiff does not contest this report. Based on this record, plaintiff did not properly exhaust any of the claims raised in this lawsuit. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment should be granted.

### III. Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (docket no. 16) be **GRANTED** and that this action be **TERMINATED**.

Dated: May 25, 2017        /s/ Ray Kent
              RAY KENT
              United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).